J-A20006-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| R.W. AND L.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.W. AND E.S. | : | |
| | : | |
| | : | |
| E.S. | : | |
| | : | |
| v. | : | |
| | : | |
| J.W. | : | |
| | : | |
| APPEAL OF: J.W. | : | No. 284 WDA 2018 |

Appeal from the Order Entered January 26, 2018
in the Court of Common Pleas of Crawford County
Civil Division at No(s): F.D. 2017-369-S

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E..: FILED SEPTEMBER 17, 2018

J.W. (Father) appeals from the order entered on January 26, 2018, that awarded primary physical custody of M.M.W. (Child) to E.S. (Mother) and partial physical custody to Father. Mother and Father were awarded joint legal custody. After review, we vacate and remand.

In its memorandum accompanying its order, dated January 26, 2018, the trial court provided the following brief, procedural history of this case:

The child who is the subject of this custody proceeding is [M.M.W.,] who was born [i]n July [of] 2013 and is therefore four

years old. [R.W.] and [L.W.] are the paternal grandparents of [C]hild. [J.W.] is the father and [E.S.] is the mother of [C]hild.

These two separate custody proceedings have been consolidated.

A mediation was held resulting in an order of October 26, 2017.

Both the paternal grandparents and [F]ather requested a De Novo hearing which we conducted on January 17, 2018.

By that time[,] counsel for the paternal grandparents explained that since their son was not incarcerated as was previously expected but was instead on house arrest/electronic monitoring, they no longer were seeking physical custody of the child but were instead taking the position that [F]ather should have primary physical custody.

Therefore, in their case in chief the paternal grandparents called as witnesses, [F]ather, the paternal grandmother and Amber Kull from CYS.

[F]ather in his case in chief testified and while we explained to [M]other that she could testify or call any witnesses that she wished to call and that we would decide the case based on whatever evidence we heard at the De Novo hearing[,] she declined to testify or call any witnesses.

Trial Court Memorandum (TCM), 1/26/18, at 1-2.[1] The trial court then discussed the facts as they related to the factors listed in 23 Pa.C.S. § 5328(a), which the court determined supported the award of primary physical custody to Mother with Father being granted partial physical custody.

Father filed a timely notice of appeal and a concise statement of errors complained of on appeal, raising the following issue for our review:

Did the trial court err or otherwise abuse its discretion in awarding primary physical custody of a minor child to [M]other when

_____

[1] We also note that Mother did not file a brief with this Court in connection with Father's and/or Paternal Grandparent's appeal.

> [M]other did not testify or otherwise have her significant other who resided with her testify or present any testimony or evidence whatsoever[?]

Father's brief at 7 (unnecessary capitalization omitted).[2]

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

_____

[2] Following the appeal filed by Father, the trial court issued a Pa.R.A.P. 1925(a) opinion, which refers this Court to the memorandum decision it issued on January 26, 2018, that provides the reasoning for its decision.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

As noted above, in its memorandum accompanying the custody order, the trial court addressed each of the section 5328(a) factors. See TCM at 2-7. The court found that factors 1, 2, 2.1, 4, 6, 7, 8, 9, 10, 11, 12, 13, and 15 favored neither party. The court found that factor 3 slightly favored Mother, and that factor 14 favored Mother, while factor 5 favored Father. Specifically, with regard to factors 3, 5, and 14, the court stated:

> [Factor 3] We next consider the parental duties performed by each party on behalf of the child. It appears that the parties shared responsibility for the parental duties (although [F]ather's testimony would indicate that he felt he did a better job of those duties) until the separation of the parties on or about August 28, 2017.
>
> Since [C]hild has been with [M]other as a result of the mediation order of October 26, 2017, she has been primarily responsible for the parental duty and we find that this factor slightly favors [M]other.
>
> . . .

[Factor 5]  The next factor we consider is the availability of extended family and as we have indicated [F]ather has his parents involved in the care and custody of this child.  He also indicated that his sister has some limited contact with the child but the contact is limited because his sister resides with an individual who is registered as a sex offender.  That limited contact with his sister appears to be as a result of CYS involvement in the life of this child over the last approximate year.

There was no indication that [M]other has any extended family available for the child and therefore this factor favors [F]ather.

.  .  .

[Factor 14]  The next factor we consider is the history of drug and alcohol abuse of a party or member of a party's household.

[F]ather had a DUI in 2009[,] which included a corruption of minors charge because apparently he had one or more minors in the vehicle with him.  He also had the DUI for which he is currently on house arrest/electronic monitoring in March of 2017[,] which was a drug related DUI.  He was only sentenced for that DUI in the fall of 2017 and his operating privileges are suspended for a period of 18 months as a result.

He indicated that [M]other had a continuing drug problem and when CYS was called while the parties were still together in 2017, he took a drug test and tested positive for THC[,] but [M]other would not take a drug test.

Apparently, ultimately she did so and any restrictions on her time with the child were removed by CYS as a result of that drug test.

We find this factor favors the mother in light of the father's recent DUI and positive test for THC.

TCM at 3, 4 and 5-6.

As for factor 16 ("Any other relevant factor"), the court did not definitively indicate whether this factor favored Mother or Father or neither parent.  Rather, the court stated:

While we had limited information about [M]other, based on the testimony of other witnesses she did indicate that the gentleman she lives with had no criminal record.

We would have preferred to have heard from him and her, but we also have concerns about [F]ather and the fact that he is newly on supervision for his second driving under the influence including currently house arrest/electronic monitoring.

Apparently[,] the parties stipulated that he was not a threat to the child pursuant to the provisions of 23 Pa.C.S.[] § 5329 and while that does not disqualify him from having custody we can still consider the information we have with regard to his criminal background regarding the DUIs and corruption of minors in deciding what is in the best interest of [C]hild.

We frankly are also concerned about the continued reporting to CYS when it appears that there really isn't anything (other than some possible drug use by both parties when they were together) that is indicated or founded, particularly the allegations that [C]hild was sexually abused.  There is an indication [C]hild told CYS her [F]ather told her to lie about what may or may not have happened to her regarding any sexual abuse in [M]other's home.

It appeared from the paternal grandmother's testimony that all started because she felt [C]hild did not want her to touch [C]hild when [C]hild was being bathed and she concluded that [C]hild had been sexually abused and between her and [F]ather concluded that it had occurred because [C]hild allegedly had contact with a friend of [M]other[] or [M]other's boyfriend who was a registered Megan's Law offender.

We note that while the evidence is sketchy, [C]hild may well have also had contact with the paternal aunt's boyfriend who is a registered sex offender.

At this time we believe [C]hild is most stable in [M]other's home and we are not prepared to disrupt that based on the evidence at the De Novo hearing.  Hopefully these parties can parent [C]hild together going forward for her benefit.

TCM at 6-7.

The main thrust of Father's argument in his brief is that "even though [F]ather made the allegations of the lack of care of [C]hild by [M]other, the failure to cook or clean or engage in any activities with [C]hild, the continuous use of serious drugs and finally the removal of [C]hild from daycare and the Head Start program, [M]other at no time took the stand to refute any of the testimony presented by [F]ather." Father's brief at 11. Moreover, Father acknowledged his two DUI arrests, but noted that the parties agreed that he "did not present a risk or threat of harm to [C]hild as a result of said DUI arrests." Id. at 12. Father also points out that CYS's caseworker testified that "a case is still open regarding the minor [C]hild['s] due to said [C]hild acting out sexually, parent's substance abuse, inadequate health care and inappropriate discipline." Id.

Generally, Father contends that in discussing the section 5328 factors, the court erred because no evidence exists in the record that supports the court's determinations. Specifically, Father discusses factor 2, claiming that based upon the evidence presented, the court erred in finding that this factor did not favor either party. Rather, Father explains that he presented evidence of suspected abuse with a knife and sexually, but that Mother refused to allow Child to undergo a physical examination. Father also relies on the absence of testimony from Mother or her significant other, which deprived the court of an ability to evaluate Mother's or her significant other's ability to care for Child. Father claims that this circumstance led to the court's making assumptions that are not supported by any evidence.

Father also discusses the court's conclusion that factor 3 slightly favors Mother, basing its conclusion on the fact that since Mother had cared for Child for a few months prior to the hearing, "she must be doing a good job." Id. at 13. Again, Father contends that nothing in the record supports this finding. The lack of testimony from Mother about her or her significant other's care of Child, balanced against Father's testimony about what he has done to care for Child, does not support a conclusion that should weigh in Mother's favor. In particular, he emphasized his arrangements for day care and the Head Start program and counseling for Child, which Mother refused to allow to continue. Based upon the evidence presented and the lack of evidence to the contrary, Father contends that this factor should have weighed in his favor.

Father also mentions factors 4 and 10, which the court found favored neither party. He points out evidence he presented that was not contradicted by any evidence from Mother. With regard to factor 4, he mentions enrollment in daycare and Head Start and his providing transportation to these programs even though Mother was not working. In addition, as for factor 10, Father again relies on his provision for Child's education, while Mother cancelled these activities. Thus, he asserts that the evidence should have supported a conclusion that these factors favored Father. Likewise, Father contends that factor 12 should have favored him. Specifically, in his brief, he states:

> Once again[,] the [c]ourt is assuming that [M]other is capable to care for [Child] or has the ability to even make appropriate child care arrangements. What we have is un-rebutted testimony of [F]ather that it was he and his family who got [C]hild to daycare and to Head Start even though [M]other lived in the house and

was at home and not working. It was [F]ather who enrolled [C]hild into [c]ounseling. It was [F]ather who attempted to get medical treatment for [C]hild at a hospital. Unfortunately, it was [M]other who canceled the two matters. Clearly[,] if the [c]ourt is going to strictly review the evidence presented, then the un-rebutted evidence presented is that [M]other does not have the availability or ability to care for [C]hild and there is no evidence presented that she has in the past or would in the future. In addition, there is no evidence that her significant other has the ability or even the desire to be available for the care of [C]hild.

Father's brief at 15.

We are compelled to agree with Father. As we noted above, Father claims that many of the court's findings are based upon assumptions and are not supported by any evidence in the record. Our review of the record in this matter reveals that Father's assertion is correct. Accordingly, we vacate the order presently on appeal and remand this case to the trial court for further proceedings. The trial court may schedule another hearing. However, if after a newly scheduled hearing is held and nothing more specific is forthcoming from or about Mother's and her significant other's care of Child, the court must revise its findings to comport with the evidence before it. Its decision cannot be based on assumptions.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2018